UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ALEXANDER WORLEY,

                    Petitioner,                    Case No. 2:22-cv-10346
                                                   Hon. Nancy G. Edmunds
v.

RANDEE REWERTS,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Robert Alexander Worley ("Petitioner") filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the St. Clair Circuit Court of four counts of first-degree criminal sexual conduct. MICH. COMP. LAWS § 257.520b(1)b). The court sentenced Petitioner to four concurrent terms of 15 to 30 years' imprisonment. Petitioner raises eight claims challenging the validity of his conviction. Because none of the claims merit relief, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

I

The Michigan Court of Appeals summarized the facts:

The 43–year-old defendant was convicted of sexually abusing JV, the daughter of his former live-in girlfriend, in their family home in St. Clair County. Defendant began dating JV's mother in 1992, when JV was two years old. Defendant and JV's mother thereafter had two children of their own. JV, aged 25 at the time of trial, testified that from ages 11 to 19, defendant continuously engaged her in sexual acts. JV testified that defendant penetrated her vagina with his penis and engaged her in oral and

anal sex. The sexual assaults began in 2001, when the family lived in Oklahoma. The four charged offenses occurred in October 2005 through June 2006, when then 15–year-old JV and her family lived in St. Clair County. In June 2006, defendant and JV's mother separated, and JV, and her two younger half-siblings, moved with defendant from St. Clair County.

At age 16, JV became pregnant by defendant, and she gave birth to a son in March 2007. By this time, defendant, JV, and other members of defendant's family had moved to Tennessee. At age 18, JV again became pregnant by defendant, and their second child was born in April 2009. In 2010, JV and her two children returned to Michigan. JV ultimately disclosed the incidents to a counselor and then made a complaint to the St. Clair police in March 2011. Defendant was not arrested until 2015. In the interim, defendant and JV had some communications, and JV allowed defendant to take their children to Tennessee in 2014. The defense theory at trial was that defendant did not do anything inappropriate and that JV's testimony was not credible. At trial, defendant maintained that he first had sex with JV when she was 16 years old, which was consensual, and did not engage in any other sexual acts with her until they began a consensual relationship when she was 18 years old.

*People v. Worley*, No. 331343, 2017 WL 3495371, at *1 (Mich. Ct. App. Aug. 15, 2017).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised the following claims:

I. Defendant was denied his right to due process of law by the inexcusable, extensive pre-arrest delay.

II. Defendant was denied a fair trial by the erroneous admission of overwhelmingly prejudicial allegations of uncharged prior bad acts.

III. Defendant was denied his right to the presumption of innocence and his right to a fair trial when a juror announced that he had contact with defendant at the detention center and the trial court denied the motion for mistrial.

IV. The trial court abdicated its responsibility and denied defendant a fair trial by failing to determine whether a witness had a valid Fifth Amendment privilege before excusing her testimony.

V. Defendant was denied his state and federal rights to the effective assistance of counsel where defense counsel failed to adequately impeach the complaining witness with her testimony at the preliminary examination.

VI. The prosecutor denied defendant a fair trial by making repeated comments denigrating the defense.

VII. Defendant was sentenced on the basis of inaccurate information where OV 8 and OV 13 were scored erroneously.

The Michigan Court of Appeals affirmed in an unpublished opinion. *Worley,* 2017 WL 3495371. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court denied leave to appeal. *People v. Worley*, 908 N.W.2d 906 (Mich. 2018).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising one claim:

I. Appellate counsel failed to raise the specific issues of trial counsel's ineffectiveness for (A) failing to motion for a bill of particulars; (B) failing to file a motion to quash the information; and (C) failed to investigate and interview the res gestae witness in a timely useful manner. Appellate counsel's constitutionally ineffective assistance establishes "good cause" and "prejudice" for defendant's failure to properly raise these issues in his prior appeal.

In a supplemental brief, Petitioner raised an additional claim asserting that the prosecutor intimidated the victim and her mother into making allegations against Petitioner.

In an opinion dated January 29, 2020, the trial court denied the motion for relief from judgment, finding that Petitioner failed to establish good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the new claims on direct appeal. (Order, ECF No. 15-14.)

Petitioner appealed this decision. The Michigan Court of Appeals denied leave to appeal because Petitioner failed to demonstrate that the trial court "erred in denying the motion for relief from judgment." *People v. Worley*, No. 355086 (Mich. Ct. App. Jan. 26,

2021). The Michigan Supreme Court denied leave to appeal by form order citing Michigan

Court Rule 6.508(D). *People v. Worley*, 967 N.W.2d 612 (Mich. 2022).

In his federal habeas petition, Petitioner raises all the claims he raised in the state

courts on direct and post-conviction review except for his sentencing claim.

II

A § 2254 habeas petition is governed by the heightened standard of review set

forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254.

To obtain relief, habeas petitioners who raise claims previously adjudicated by state

courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved

an unreasonable application of, clearly established Federal law,' or (2) 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. §

2254(d)). The focus of this standard "is not whether a federal court believes the state

court's determination was incorrect but whether that determination was unreasonable—

a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA

thus imposes a highly deferential standard for evaluating state-court rulings and demands

that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766,

773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S.

652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct

on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

III

A

Petitioner first claims that he was denied a fair trial due to pre-arrest delay. He asserts that the victim made a police report in 2011, but police waited until 2015 to arrest him, hampering his ability to defend against the charges.

The Michigan Court of Appeals rejected the claim on the merits on direct appeal because Petitioner failed to demonstrate that he was prejudiced by the delay:

> Defendant claims that he was prejudiced by the four-year delay because he lost text messages, cards, and "love letters" from JV that could have undermined her claim that she feared defendant. Initially, defendant contends that those communications were made between 2010 and 2015. The four-year delay would not have affected his efforts to retrieve any of the later communications. More significantly, defendant has not demonstrated substantial prejudice. The unavailability of evidence alone is insufficient to show that defendant suffered actual and substantial prejudice, *Woolfolk*, 304 Mich. App. at 454, and defendant has made no showing that evidence that JV communicated favorably with him between 2010 and 2015 would have exonerated him. Indeed, the defense used other means to argue that JV was not fearful of defendant, including the fact that she chose to live with him over her mother, began a relationship with him after she turned 18, allowed him to take physical custody of their children, and gave him and his wife tattoos. The loss of the letters, assuming they existed, is not sufficient to satisfy the actual and substantial prejudice requirement.

> Defendant also claims that he was prejudiced by the delay because of the death of his sister, Cynthia McElhaney. Defendant indicates that Cynthia, who lived in the same household as defendant and JV at certain periods, would have "testified regarding the complainant's veracity." Preliminarily, defendant fails to indicate when Cynthia died. Moreover, Cynthia was only one of several relatives who lived in the same household. The defense presented several of the other live-in relatives, including a different sister, an adult nephew, and defendant's daughter, who testified about their observations and opinions that JV was not truthful. The record fails to disclose that Cynthia's unavailability impaired defendant's ability to

defend against the charges to an extent that the outcome of the proceeding was likely affected.

Defendant lastly argues that he was prejudiced by the delay because of his own inability "to remember the names of potential witnesses who knew [JV] during the relevant times at issue and who could offer testimony regarding the veracity of [JV]." But again, general allegations of prejudice caused by delay, such as the unspecified loss of memory, are insufficient to show that a defense was affected. *Woolfolk*, 304 Mich. App. at 454. Defendant has failed to show that his alleged loss of memory resulted in any meaningful impairment of his defense. The trial court did not abuse its discretion in denying defendant's motion to dismiss based on the prearrest delay.

*Worley*, 2017 WL 3495371, at *1-2.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law. The Due Process Clause provides a limited role in protecting criminal defendants against pre-arrest or pre-indictment delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). Proof of prejudice is a necessary but not sufficient element of a due process claim involving pre-indictment delay, and the inquiry must also consider the reasons for the delay. *See id*. at 790. The Sixth Circuit has "consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial and (2) that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (emphasis in original; internal quotation marks and citation omitted). Where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists. *United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997); *Wolfe v. Bock*, 253 F. App'x 526, 532 (6th Cir. 2007) (no due process deprivation of right to fair trial when petitioner failed

to establish that 15-year delay between murder and his arrest was for illegitimate reasons).

Here, Petitioner has not identified any evidence indicating that the prosecution delayed his arrest to gain a tactical advantage or for some other illegitimate reason. The only reason for the delay appearing in the record came from defense counsel's assertions at the hearing on his motion to dismiss. Counsel asserted that the four-year delay between the victim's 2011 complaint to the Sheriff's Department and Petitioner's 2015 arrest was due to a lack of resources at the St. Clair County Prosecutor's Officer and the fact that Petitioner was living in Tennessee. (ECF No. 15-8, at 4-5.) There is thus no record evidence or allegation that the prosecutor intentionally delayed the arrest to gain a tactical advantage.

While the state court focused on Petitioner's failure to show that he was prejudiced by the delay, Petitioner cannot demonstrate that the state court violated established Supreme Court law because he offers no argument or evidence indicating an illegitimate reason for the delay. The claim is without merit.

B

Petitioner's second claim asserts that he was denied a fair trial by the erroneous admission of other-acts evidence. Petitioner asserts that the other-acts evidence should have been excluded under Michigan Rule of Evidence 403 as more prejudicial than probative.

The record indicates that the prosecutor moved to introduce evidence of numerous sexual assaults perpetrated by Petitioner against the victim in other jurisdictions starting when the victim was eleven years old. (ECF No. 15-6, at 33.) Petitioner asserted that

evidence of the other acts should not be admitted because they were inflammatory, and the passage of time made it difficult for Petitioner to respond to the evidence. The trial court nevertheless admitted the evidence under Michigan Rule of Evidence 404(b) and Michigan Compiled Laws § 768.27a. (ECF No. 15-14.) The Michigan Court of Appeals found that the trial court properly admitted the evidence under state law. *Worley*, 2017 WL 3495371, at *3-4.

With respect to whether any state evidentiary rule was violated, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citation omitted).

The appraisal of the probative and prejudicial value of evidence involves a question of state evidentiary law and is left to the sound discretion of state trial court judges. *Clark v. O'Dea*, 257 F.3d 498, 503 (6th Cir. 2001). And a federal habeas court will not overturn a state court's determination that evidence is more probative than prejudicial. *See id*. Nor does a state court's decision to admit relevant other-acts evidence under state evidentiary rules raise a constitutional issue under established Supreme Court law. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.").

Petitioner's second claim therefore does not state a cognizable basis for granting habeas relief.

C

Petitioner's third claim asserts that the trial court erred in failing to declare a mistrial when, during jury selection, a prospective juror indicated that he could not be impartial because he was employed as a corrections officer at the county detention center and interacted with Petitioner there. Petitioner asserts that exposing the other jurors to this information rendered his trial fundamentally unfair.

The Michigan Court of Appeals found that the claim was without merit:

> Although the potential juror's brief comments indicated that defendant was housed at the Intervention Center, they provided no additional information. The trial court instructed the jury on the presumption of innocence in its preliminary instructions and further discussed the presumption of innocence during voir dire (after the juror had been excused) as defense counsel questioned a different juror about his understanding that defendant did not need to prove his innocence, noting that the presumption is a "legal requirement." The jurors who remained explicitly indicated that they could be fair and impartial. The trial court again instructed the jury of the presumption of innocence in its final instructions and reminded the jury that it took an oath to decide the case based only on the properly admitted evidence and the law as instructed by the court. Given the evidence presented in this case, we see no basis to conclude that the revelation that defendant was in custody caused his conviction. For these reasons, the trial court did not abuse its discretion in ruling that the prospective juror's comments were not grounds for a mistrial.

*Worley*, 2017 WL 3495371, at *3-4 (footnote omitted).

The claim is most appropriately viewed as one alleging that the jury was exposed to prejudicial extraneous information. A defendant has a right under the Sixth Amendment to be tried by a fair and impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 153 (1968). A Sixth Amendment violation may occur when a jury is exposed to extrinsic evidence or other extraneous influence. *See Tanner v. United States*, 483 U.S. 107, 117-18 (1987). As a general rule, however, a habeas petitioner is not entitled to relief if the jurors affirm that they are able to put aside any extraneous information and render a verdict based on

the evidence presented in court. *Williams v. Bagley*, 380 F.3d 932, 945 (6th Cir. 2004). In evaluating such claims, a reviewing court begins "with the well-established presumption of juror impartiality" as "well as the equally important presumption that jurors followed the trials court's instructions." *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006).

The following exchange took place during jury selection:

THE COURT: So, I'm going to ask this question kind of broadly, but do any of you that are currently seated in the jury box know Mrs. Armstrong, Detective Wade, Mr. Kanan or Mr. Worley? All right, Mr. Biscarner.

JUROR 11: Yes, your Honor.

THE COURT: Who do you know?

JUROR 11: I know the Defendant and I also know Detective Wade. I work at the Intervention Center so I have every day interaction with Mr. Worley and then I see Detective Wade passing through the hallway and I've had interaction with her also.

THE COURT: All right. So you work at the Intervention Center. What is the nature of your employment there?

JUROR 11: I am a correction deputy right now –

THE COURT: All right.

JUROR 11: -- your Honor.

THE COURT: The fact that you are employed in that capacity and you have daily or regular conduct with people that are housed at the Intervention Center for whatever reason and that you have had some contact with Mr. Worley, Detective Wade, obviously as an employee of the Sheriff's Department you would see her from time to time, do you believe that that knowledge or those contacts would affect your ability to be a fair and impartial juror in this particular case?

JUROR 11: Yes, your Honor.

THE COURT: You are excused, sir.

JUROR 11: Thank you.

(ECF No. 15-9, at 15-17.)

The Court of Appeals decision that a mistrial was not required after this exchange falls well within the range of reasonable outcomes. *See, e.g.*, *United States v. Shropshire*, 498 F.2d 137, 139 (6th Cir. 1974) (district court properly denied motion to dismiss jury venire after a potential juror stated he had personal knowledge of defendant's prior criminal activity); *United States v. Howard*, 216 F. App'x 463, 473 (6th Cir. 2007) (district court did not abuse its discretion in denying motion for mistrial after prospective juror stated with respect to a defense witness that he "wouldn't believe the man if he laid his hands on a stack of bibles."); *Bowie v. Thurmer*, 342 F. App'x 200, 204 (7th Cir. 2009) (counsel not ineffective for failure to ask trial judge to strike entire jury venire after a prejudicial comment was made by a prospective juror who worked as a correctional officer at the local jail).

The trial court's remedy of striking the juror for cause without declaring a mistrial or dismissing the entire venire was an appropriate remedy. *See United States v. Davis*, 407 F. App'x 32, 37 (6th Cir. 2011). The prospective juror had simply disclosed that he knew Petitioner and one of the detectives, that he worked as a corrections officer and saw Petitioner at the jail, and that he did not believe he could be impartial. He did not say whether he believed Petitioner to be guilty or innocent or trustworthy or untrustworthy. For all the record shows, the juror might have had a favorable opinion of Petitioner. The juror did not hint at having any information or opinion regarding Petitioner's guilt or innocence, one way or the other. The trial court went on to instruct the jury several times regarding the presumption of innocence, and the jury took an oath to follow the court's instructions.

The determination by the Michigan Court of Appeals that a mistrial was not required did not involve an unreasonable application of clearly established Supreme Court law.

D

In his fourth claim Petitioner argues that he was denied his right to present a defense when the trial court allowed his mother to assert her Fifth Amendment privilege against self-incrimination. Petitioner asserts that if his mother had been compelled to testify, she would have contradicted the victim's account of one of the assaultive episodes.

The Michigan Court of Appeals denied the claim on the merits:

> The record reveals that the trial court complied with the applicable procedure and properly concluded that JV's mother could not be compelled to be called as a witness. During JV's cross-examination testimony, defense counsel elicited that JV's mother knew about defendant engaging in sexual acts with her and that her mother had actually participated in some of the sexual acts with defendant and JV when JV was approximately 14 years old. After the completion of JV's testimony, the prosecutor informed the court that JV's mother would assert her privilege against self-incrimination if she testified at trial. The trial court held a hearing and offered to appoint counsel for JV's mother, which she refused. JV's mother stated that she understood her privilege and was firm on her decision not to testify. Although defendant complains that the trial court did not question JV's mother concerning the validity of her assertion of the privilege against self-incrimination, the court was well aware that JV had implicated her mother as being complicit in some of the sexual assaults. It was evident from JV's testimony that her mother had a "reasonable basis ... to fear incrimination from questions[.]" *Dyer*, 425 Mich. at 578. Under the Fifth Amendment, "testimony having even a possible tendency to incriminate is protected against compelled disclosure." *People v. Lawton*, 196 Mich. App. 341, 346 (1992). Accordingly, the trial court did not err in ruling that JV's mother had a valid Fifth Amendment privilege against self-incrimination and, accordingly, did not abuse its discretion when it excused her as a witness.

*Worley*, 2017 WL 3495371, at *4.

Established Supreme Court law holds that if a subpoenaed witness demonstrates that her testimony could be used in a criminal proceeding against her, she is entitled to invoke her Fifth Amendment privilege prior to testifying. *See United States v. Balsys*, 524 U.S. 666, 671-72 (1998). When a witness attempts to invoke the right against self-incrimination, a trial court is required to determine whether there is a basis for the witness to do so. *See Malloy v. Hogan*, 378 U.S. 1, 34 (1964).

Here, the victim's testimony clearly implicated her mother in criminal activity when she claimed that her mother participated with Petitioner in some of the sex acts. (ECF No. 15-9, at 214-216.) In light of this testimony, the trial court held a hearing outside the presence of the jury to address the issue. The prosecutor asked the witness if she was familiar with the allegation of sexual assault made against her by her daughter. She answered affirmatively and said that she intended to assert her Fifth Amendment privilege. (*Id.* at 256.) The trial judge then asked the witness about her understanding of her Fifth Amendment right and asked if she wished to have counsel appointed to advise her. The witness declined. (*Id.* at 256-57.)

On this record, given the victim's testimony that her mother participated in an act of criminal sexual conduct, the witness had a valid reason to assert her privilege against self-incrimination. The trial court fully complied with Supreme Court precedent when it determined after questioning the witness that she could not be compelled to take the stand. *See Balsys*, 524 U.S. at 671-72. The claim is without merit.

E

Petitioner's fifth claim asserts that he was denied the effective assistance of counsel when his trial attorney failed to impeach the victim with particular inconsistent statements she made at the preliminary examination.

The Michigan Court of Appeals rejected the claim on the merits:

> Defendant complains that defense counsel failed to adequately challenge JV's trial testimony with inconsistencies in her prior testimony regarding her motive for ultimately reporting defendant in 2011. As defendant observes, JV initially testified at trial that she reported defendant because her counselor encouraged her to do so. On cross-examination, using JV's preliminary examination testimony, the following exchange occurred:

>> Defense counsel: Now, do you recall being asked and maybe I should ask you now in 2011 why did you feel compelled to make this complaint to law enforcement?

>> JV: Because I had got myself a counselor and I talked to her about everything that happened to me and she showed me that basically that it was wrong what he'd done. So, I went ahead and I called up our, I went ahead and I went to the Wayne County Police Department and they told me I had to come up here.

>> Defense counsel: So you're telling me that the primary reason why you reported this in 2011 was because of your counselor, correct?

>> JV: Correct, but it was my choice to do it cause I wanted to.

>> Defense counsel: Do you remember me asking you in July why you reported this in 2011, and do you recall what your answer was?

>> JV: No, I don't. Defense counsel: So I'm going to show you page 43....

>> * * *

>> JV: Yes, I remember saying that.

Defense counsel: So when I asked you in July of 2015 why you felt compelled to report this to the Sheriff's Department what was your response?

JV: My, do I read it?

Defense counsel: Well, if it refreshes your memory you can tell me what your response was?

JV: Oh, because of the mean and threatening phone calls I was receiving.

Defense counsel: So you reported this because [defendant] was calling you and threatening you—

JV: Uh-hum.

Defense counsel: —in March of 2011?

JV: Yes.

Defense counsel: And what was he threatening you about, taking the children?

JV: He, I don't exactly remember what he was threatening, but he would get, he would get violent over the phone, threat— there was one time I got threatened to where I, he'd come up here and I'd get hurt or something like that. I can't remember what the conversation was about. And I just got tired of it. And I just got tired of that. And that's why I cut off all contact with him and didn't let my kids talk to him or anything.

Defendant acknowledges this exchange, but contends that defense counsel allowed JV to avoid her exact prior testimony that defendant threatened to take the children and that "she was tired of the drama." Defendant provides additional questions that he contends defense counsel should have asked JV, such as using her prior testimony that some of the sexual assaults occurred in defendant's room to challenge her trial testimony that all of the sexual assaults occurred in her bedroom.

The record demonstrates that defense counsel used JV's prior testimony to discredit her at trial, even if he did not ask each question that defendant now suggests. When defendant raised this complaint at sentencing, the trial court observed that defense counsel "pointed out numerous inconsistencies which gave the jury the ability to adequately and fully assess the credibility of [JV]", an observation that the record bears out.

In addition to inconsistencies in her own testimony, defense counsel cross-examined JV about inconsistencies in her testimony and the statements she made to the police, and called the initial interviewing officer as a defense witness. In closing argument, defense counsel highlighted those inconsistences to argue that JV was not credible. In addition to eliciting inconsistencies, defense counsel emphasized that JV chose to continue living with defendant, as opposed to her mother, when they separated in 2006, and argued that JV's choice undermined any claim that she was afraid of defendant. Defense counsel further cross-examined JV regarding the fact that she claimed that defendant threatened to take their children if she did not marry him in 2010, but he never took the children, and she was actually able to prevent him from seeing them for years. The record does not support a finding that defense counsel's impeachment efforts and defenses were objectively unreasonable or prejudicial.

*Worley*, 2017 WL 3495371, at *5-6.

Claims for habeas relief based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the familiar deficient two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, a habeas petitioner must first show "that counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which the Court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Demonstrating prejudice also requires a petitioner show "a reasonable probability" of a different outcome. *Lafler*, 566 U.S. at 163. Even in the habeas context, this is a lower standard than establishing counsel's performance "more likely than not altered the outcome," but still requires a "substantial" likelihood, not just a "conceivable" one. *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693; *see also Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) ("speculation is insufficient to make out a successful claim of prejudice").

The Michigan Court of Appeals found that trial counsel's cross-examination of the victim was not deficient because, although counsel did not ask every question Petitioner wanted, counsel challenged the victim with her prior inconsistent testimony and prior inconsistent statements to police. The question under *Strickland* is not whether counsel provided the most aggressive defense possible – it is whether the defense that was actually presented was at least professionally competent. The question under AEDPA is even more limited and asks whether a reasonable jurist might resolve the claim against Petitioner. Because defense counsel challenged the victim's credibility both on cross-examination and during closing argument in substantial and reasonably professional ways, Petitioner cannot demonstrate entitlement to relief based on this claim under this doubly-deferential standard.

F

Petitioner asserts in his sixth claim that the prosecutor committed misconduct during rebuttal argument. Petitioner asserts that it was improper for the prosecutor to assert that defense counsel used "distortions," "red herrings," and that he was just "hoping something would stick."

The Michigan Court of Appeals rejected the claim as follows:

> Viewed in context, the prosecutor's remarks, made during rebuttal argument, did not suggest that counsel was trying to mislead the jury, but fairly responded to defense counsel's closing argument by responding, on the basis of the evidence, that the defense's theory of the case was a pretense and ignored the evidence. In specific, during closing argument, defense counsel argued that the jury should believe defendant and find JV to be "a liar." Defense counsel argued that the prosecutor "likes to pick and choose what testimony she wants you to see or hear," and emphasized that JV had the choice to decide with whom she would live, yet, if JV is believed, it would mean she chose to live with a "rapist." The prosecutor argued that defense counsel ignored the reasons that JV gave for why she stayed with defendant. The prosecutor also addressed defense counsel's negative assertions regarding the two officers involved in the case. Defense counsel suggested that the officer in charge was hiding something because he testified about defendant's interview, but did not play the videotape of the interview. Counsel further emphasized that the defense had to call the initial reporting deputy as a defense witness, and characterized the deputy as a "prosecution witness." The prosecutor discussed the evidence that supported her argument that defendant's story was not believable. The mere use of the challenged language in this context did not make the argument improper. The prosecutor was not required to state her inferences in the blandest possible language. *People v. Dobek*, 274 Mich. 58, 66 (2007). Her remarks were not clearly improper.

*Worley*, 2017 WL 3495371, at *6 (footnote omitted).

This decision did not involve an unreasonable application of the clearly established Supreme Court standard. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). A prosecutor's conduct will violate a criminal defendant's constitutional rights only if it "so infected the

trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

A prosecutor "necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence, and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 330 (6th Cir. 2012). And a reviewing court may therefore consider whether a challenged statement by the prosecutor was "invited by or was responsive" to the defense. *See, e.g.*, *Darden*, 477 U.S. at 182.

The state court reasonably found that the challenged remarks were a proper response to arguments raised by defense counsel in closing argument. Given the "substantial breathing room" enjoyed by state courts in analyzing prosecutorial misconduct claims, the rejection of Petitioner's prosecutorial misconduct claim did not constitute an objectively unreasonable application of clearly established federal law. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). The claim is without merit.

G

Petitioner's remaining two claims were presented to the state trial court in his motion for relief from judgment and for an evidentiary hearing. His seventh claim presents additional allegations of ineffective assistance of counsel, and his eighth claim asserts that the prosecutor intimidated witnesses.

The trial court denied the motion for relief from judgment, stating that to be entitled to review of his new claims, Petitioner was required to establish under Michigan Court Rule 6.508(D)(3) "good cause" for his failure to raise the claims on direct appeal. The court then found that Petitioner's assertion that his appellate counsel was ineffective for failing to raise his new claims was without merit and found that he had therefore not established cause. (ECF No. 1-14, at 1-3.) On appeal, the Michigan Court of Appeals denied Petitioner's application for leave to appeal because he "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 8-4.) The Michigan Supreme Court denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). (ECF No. 8-6.)

Respondent asserts that the grounds for decision by the state court bars review of these claims in this action.

In deciding whether a habeas petitioner procedurally defaulted a claim in state court, a habeas court must consider whether "(1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim." *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011). To overcome a procedural default, a habeas petitioner must show cause for his failure to raise the claims and prejudice arising therefrom, or that failing to review the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

All three elements of procedural default are satisfied. By raising these claims for the first time in his motion for relief from judgment, Petitioner failed to comply with Rule

6.508(D)(3), which bars post-conviction relief on claims that "could have been raised on appeal from the conviction and sentence." Further, Rule 6.508(D)(3) is an independent and adequate state ground for denying review of a federal constitutional claim. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Finally, the trial court's order denying the motion, which is the last reasoned state court decision on the claim, *see Guilmette v. Howes*, 624 F.3d 286, 289-92 (6th Cir. 2010) (en banc), made clear that the court was denying relief on the procedural grounds contained in Rule 6.508(D)(3).

Petitioner asserts that his appellate counsel was ineffective for failing to raise these two claims on direct appeal, and this constitutes cause to excuse the default. Ineffective assistance of appellate counsel can establish cause for a procedural default. *See Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007). Appellate counsel, however, is not required "to raise every nonfrivolous claim on direct appeal" to provide reasonably effective representation. *See Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). The failure to raise claims on direct appeal is ineffective only when the "[omitted] issues are clearly stronger than those presented." *Id*.

The claims Petitioner raised on post-conviction review are not clearly stronger than the ones he raised on direct appeal. Both post-conviction claims are centered on the allegation that counsel should have interviewed Petitioner's other daughter prior to trial. He says this would have revealed the pressure the prosecutor put on the victim and her mother to make the accusations against him, provided a basis for additional pretrial motions, and it would have provided additional grounds for challenging the victim during cross-examination.

The record indicates, however, that defense counsel did call the victim's sister as a defense witness. The victim's sister testified that she always slept in the same room as the victim, and Petitioner never asked her to leave the bedroom. (ECF No. 15-10, at 306-14.) She also testified that she and the victim told each other everything as kids, that the victim never appeared to fear Petitioner, and that the victim was dishonest. (*Id*. at 313-14.) The victim's sister also testified that she never saw Petitioner go into the bedroom with the victim. (*Id*. at 314.)

The fact that the sister testified at trial for the defense provided strong record support for the prosecutor to contest Petitioner's allegation that counsel failed to interview her prior to trial. And the fact that the jury convicted Petitioner despite the sister's favorable testimony provided strong record support for the prosecutor to contest Petitioner's allegation of *Strickland* prejudice. Petitioner fails to show that his post-conviction claims are clearly stronger than his direct appeal claims. Petitioner therefore fails to establish that his appellate counsel was ineffective. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Petitioner's seventh and eighth claims are irrevocably barred from review.

As Petitioner is not entitled to relief on any of his habeas claims, the petition will be denied.

IV

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy §

2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The Court will therefore deny a certificate of appealability.

The Court also finds that because any appeal of this order would be frivolous, permission to appeal in forma pauperis will likewise be denied. FED. R. APP. P. 24(a).

V

**THEREFORE, IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal in forma pauperis is **DENIED**.

**SO ORDERED.**

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated:   October 23, 2023